IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-862-D

| | | |
|---|---|---|
| MYRA D. WIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PLANET HOME LENDING, LLC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Myra D. Wiggins ("Wiggins" or "plaintiff") is upset about a state-court foreclosure action, and filed a pro se complaint seeking damages and injunctive relief. See Compl. [D.E. 1]. On December 23, 2014, Planet Home Lending, LLC, formerly known as Green Planet Servicing, LLC ("Planet Home"), Thomas O'Connell, Philip A. Glass, Theodore A. Nodell, Charlee Eades, and Lenny Cicero (collectively, "defendants") moved to dismiss Wiggins's complaint. See [D.E. 17]; Fed. R. Civ. P. 12(b)(1), (b)(6).[1] On January 20, 2015, the court notified Wiggins about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 22]. On January 21, 2015, Wiggins moved to amend her complaint. See [D.E. 23, 23-1]. On February 4, 2015, defendants responded in opposition to Wiggins's motion to amend her complaint. See [D.E. 25]. On February 10, 2015, Wiggins replied to the defendants' response concerning the motion to amend. See [D.E. 26]. As explained below, the court grants defendants' motion to dismiss and denies Wiggins's motion to amend as futile.

---

[1] Charlee Eades and Lenny Cicero are substitute trustees under the deed of trust at issue in this case. See [D.E. 1-4]. Wiggins did not name them in the caption of this action, but did name them as defendants in her complaint. See Compl. 2.

I.

On May 29, 2010, Wiggins executed a promissory note in the amount of $94,366.00 in favor of Mortgage Investors Corporation. See [D.E. 17-1].[2] Wiggins also executed a deed of trust to secure the note. See [D.E. 17-2]. The security under the deed of trust was property located in Zebulon, North Carolina ("property"). Id. 4. After the loan closed, Mortgage Investors Corporation transferred the note to Planet Home. Cf. [D.E. 1-4].

Wiggins was required to make monthly payments under the terms of the note and deed of trust. See [D.E. 17-1] 1; [D.E. 17-2] 5. Wiggins made some payments, but she eventually failed to make the monthly payments required under the terms of the note and deed of trust.

Planet Home accelerated the balance of the loan due under the note and deed of trust. On October 1, 2014, an appointment of substitution of trustee was recorded in the Johnston County Register of Deeds, which substituted Philip A. Glass, Charlee Eades, or Lenny Cicero as the substitute trustee under the deed of trust. See [D.E. 1-4]. On October 8, 2014, Philip A. Glass filed a notice of foreclosure hearing, with a foreclosure hearing date of November 6, 2014. See [D.E. 1-6].

On November 6, 2014, the Johnston County Clerk of Court conducted a foreclosure hearing under N.C. Gen. Stat. § 45-21.16. See [D.E. 1-9]. Wiggins unsuccessfully contested the foreclosure. On November 6, 2014, the clerk entered an order allowing the foreclosure to proceed. Clerk's

---

[2] The court takes judicial notice of the public records in Wiggins's foreclosure action. See Fed. R. Civ. Evid. 201; Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004); Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989). Defendants attached some of those public records to their motion to dismiss. See [D.E. 17-1, 17-2, 17-3].

2

Foreclosure Order (N.C. Super. Ct. Nov. 6, 2014); see [D.E. 25-1] 4. On November 10, 2014, Wiggins filed a notice of appeal of the clerk's order allowing the foreclosure. [D.E. 1-9]; N.C. Gen. Stat. § 45-21.16(d1). On January 26, 2015, Johnston County Superior Court considered Wiggins's appeal and concluded that the foreclosure was proper under North Carolina law and that the substitute trustee was entitled to complete the foreclosure under the deed of trust. See [D.E. 25-1]. Wiggins did not appeal to the North Carolina Court of Appeals.

In this federal action, Wiggins asserts that she does not owe a debt to Planet Home. See [D.E. 1-2]. Wiggins, however, raised this issue at the foreclosure hearing and lost. See [D.E. 25-1].

In moving to dismiss Wiggins's complaint, defendants initially argue that the court lacks subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). Because Wiggins asserts that this court has subject-matter jurisdiction, she must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Evans, 166 F.3d at 647.

Wiggins's complaint fails to establish subject-matter jurisdiction. Indeed, Wiggins's complaint simply lists various federal laws, but fails to provide any explanation regarding how or why defendants violated the federal laws. See Compl. 2–4. Thus, her complaint fails to establish

3

subject-matter jurisdiction. See, e.g., Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005); Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999); Jacobs v. Campbell, No. 7:13-CV-240-D, 2014 WL 4261584, at *1–2 (E.D.N.C. Aug. 27, 2014) (unpublished).

Alternatively, Wiggins's complaint is barred by collateral estoppel. Wiggins's claims arise from the November 2014 foreclosure proceeding under N.C. Gen. Stat. § 45-21.16 in Johnston County Superior Court. Under the doctrine of collateral estoppel, "a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 428, 349 S.E.2d 552, 557 (1986). This doctrine requires (1) a prior suit resulting in a final judgment on the merits; (2) identical issues involved; (3) the issue was actually litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined. See id. at 429, 349 S.E.2d at 557; see also Allen v. McCurry, 449 U.S. 90, 94–95 (1980); Sartin v. Macik, 535 F.3d 284, 287–88 (4th Cir. 2008); Meehan v. Cable, 127 N.C. App. 336, 339–40, 489 S.E.2d 440, 443 (1997).

In North Carolina, the Clerk of Superior Court presides over power of sale foreclosure actions. See N.C. Gen. Stat. § 45-21.16(d). A clerk's judgment "will stand as [the] judgment of the court." In re Atkinson-Clark Canal Co., 234 N.C. 374, 377, 67 S.E.2d 276, 278 (1951). Any issue that the clerk decides in a foreclosure proceeding pursuant to N.C. Gen. Stat. § 45-21.16(d) is conclusive unless appealed and reversed and cannot be relitigated in a subsequent lawsuit. See Haughton v. HSBC Bank USA, N.A., 737 S.E.2d 191, 2013 WL 432575, at *3 (N.C. Ct. App. 2013) (unpublished table decision); see also Newton v. Nationstar Mortg. LLC., No. 7:14-CV-16-D, 2015 WL 3413256, at *2 (E.D.N.C. May 26, 2015) (unpublished); Carmichael v. Irwin Mortg. Corp., No.

4

5:14-CV-122-D, 2014 WL 7205099, at *4 (E.D.N.C. Dec. 17, 2014) (unpublished); Lewis v. Kesterson, No. 7:12-CV-352-BO, 2013 WL 5525663, at *1–2 (E.D.N.C. Oct. 3, 2013) (unpublished); Oketch v. JPMorgan Chase & Co., Inc., No. 3:12-CV-00102, 2012 WL 2155049, at *4 (W.D.N.C. June 13, 2012) (unpublished); Jones v. HSBC Bank USA, N.A., No. RWT 09CV2904, 2011 WL 382371, at *5 (D. Md. Feb. 3, 2011) (unpublished); Coleman v. Countrywide Home Loans, Inc., Civil Case No. L-10-2297, 2010 WL 5055788, at *3–4 (D. Md. Dec. 3, 2010) (unpublished); Merrill Lynch Bus. Fin. Servs., Inc. v. Cobb, No. 5:07-CV-129-D, 2008 WL 6155804, at *3 (E.D.N.C. Mar. 18, 2008) (unpublished); Douglas v. Pennamco, Inc., 75 N.C. App. 644, 646, 331 S.E.2d 298, 300 (1985); Phil Mech. Constr. Co. v. Haywood, 72 N.C. App. 318, 320–23, 325 S.E.2d 1, 1–3 (1985). A party may appeal a decision of the clerk of court to the superior court, where the decision is reviewed de novo. See N.C. Gen. Stat. § 45-21.16(d1); Phil Mech. Contr. Co., 72 N.C. App. at 322, 325 S.E.2d at 3. In conducting its review, the superior court may consider evidence of legal defenses tending to negate any of the clerk's findings required under N.C. Gen. Stat. § 45-21.16. See In re Foreclosure of Deed of Trust, 334 N.C. 369, 374–75, 432 S.E.2d 855, 859 (1993). The review is limited to these findings, and the superior court has no equitable jurisdiction to enjoin foreclosure on any ground other than those stated in N.C. Gen. Stat. § 45-21.16. See id. 334 N.C. at 374, 432 S.E.2d at 859; In re Helms, 55 N.C. App. 68, 71–72, 284 S.E.2d 553, 555 (1981).

Essentially, the issues that Wiggins raises in her complaint are identical to those that the clerk determined on November 6, 2014, and that the Superior Court affirmed on January 26, 2015. Here, Wiggins collaterally challenges that a valid debt exists and whether Planet Home is the holder of the subject note and deed of trust. These claims pertain solely to issues decided against Wiggins in the

5

foreclosure action and are barred by collateral estoppel.[3] Moreover, Wiggins's claims in her complaint fail to implicate federal law or any other grounds for federal subject-matter jurisdiction. See, e.g., Citimortgage, Inc. v. Grampus, No. 3:13CV22-MOC-DSC, 2013 WL 1196582, at *1–2 (W.D.N.C. Mar. 25, 2013) (unpublished); Tr. Servs. of Carolina, LLC v. Rivera, No. 3:12CV146-MOS-DSC, 2012 WL 1645599, at *1–2 (W.D.N.C. Mar 27, 2012) (unpublished); Simpson v. Simpson, No. 3:11CV576-MOC-DSC, 2012 WL 1021773, at *1–2 (W.D.N.C. Feb. 7, 2012) (unpublished); Nationwide Tr. Servs., Inc. v. Rivera, No. 3:11CV528-RJC-DSC, 2012 WL 1395557, at *1–2 (W.D.N.C. Jan. 19, 2012) (unpublished); Ashford v. Countrywide Home Loans, No. 7:10-CV-162-D, 2010 WL 4117402, at *1 (E.D.N.C. Oct. 18, 2010) (unpublished); In re Foreclosure by David Simpson, No. 3:10CV112-RJC-DSC, 2010 WL 1838181, *2 (W.D.N.C. Apr. 13, 2010) (unpublished). Thus, the court lacks subject-matter jurisdiction.

Alternatively, the Rooker-Feldman doctrine prohibits a "party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983); see Washington v. Wilmore, 407 F.3d 274, 279 (4th Cir. 2005). "The Rooker-Feldman doctrine bars lower federal courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." Washington, 407 F.3d at 279. Moreover, "if the state-court loser seeks

---

[3] To the extent any of these issues could have been raised against certain defendants as a defense in the underlying foreclosure proceeding, they are barred by the doctrine of res judicata. See, e.g., Goins v. Cone Mills Corp., 90 N.C. App. 90, 93, 367 S.E.2d 335, 336–37 (1988) (noting that the doctrine of res judicata bars "every ground of recovery or defense which was actually presented or which could have been presented in the previous action (emphasis added)).

6

redress in the federal district court for the injury caused by the state-court decision, [her] federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside the jurisdiction of the federal district court." Davani v. Va. Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006).

The Rooker-Feldman doctrine encompasses "not only review of adjudications of the state's highest court, but also the decisions of its lower courts." Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir. 2000) (quotation omitted). Rooker-Feldman "reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeal." Id. (quotation omitted). "The doctrine [also] preserves federalism by ensuring respect for the finality of state court judgments." Washington, 407 F.3d at 279.

The Rooker-Feldman doctrine is a "narrow doctrine." Lance v. Dennis, 546 U.S. 459, 464 (2006). The doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280, 284 (2005); see Skinner v. Switzer, 131 S. Ct. 1289, 1297 (2011). For the doctrine to apply, the party seeking relief in federal court must be asking the federal court to "reverse or modify the state court decree." Adkins v. Rumsfeld, 464 F.3d 456, 464 (4th Cir. 2006) (quotation omitted). Accordingly, the court "examine[s] whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If [the state-court loser] is not challenging the state-court decision, the Rooker-Feldman doctrine does not apply." Davani, 434 F.3d at 718 (footnote omitted); see Washington, 407 F.3d at 280.

Here, at least in part, Wiggins apparently asserts federal claims to challenge the state-court

7

foreclosure judgment against her. Essentially, Wiggins's complaint concerns her claim that she did not owe defendants a valid mortgage debt, but that defendants illegally foreclosed on her property. See Compl. Wiggins asks the court to reverse the foreclosure, discharge the loan, and reinstate her to the property. See id. This court, however, lacks subject-matter jurisdiction to sit in direct review of a North Carolina state foreclosure action. See, e.g., Brown & Root, Inc., 211 F.3d at 199–202; Jordahl v. Democratic Party of Va., 122 F.3d 192, 202–03 (4th Cir. 1997); Carmichael, 2014 WL 7205099, at *2–3; Pitts v. U.S. Hous. & Urban Dev., No. 5:12-CV-72-D, 2013 WL 214693, at *3 (E.D.N.C. Jan. 18, 2013) (unpublished), aff'd, 546 F. App'x 118 (4th Cir. 2013) (per curiam) (unpublished); Adolphe v. Option One Mortg. Corp., No. 3:11-CV-418-RJC, 2012 WL 5873308, at *4 (W.D.N.C. Nov. 20, 2012) (unpublished); Watkins v. Clerk of Superior Court for Gaston Cnty., No. 3:12-CV-033-RJC-DCK, 2012 WL 5872751, at *5–6 (W.D.N.C. July 10, 2012) (unpublished), report and recommendation adopted, 2012 WL 5872750, at *4–6 (W.D.N.C. Nov. 20, 2012) (unpublished). Thus, the court lacks subject-matter jurisdiction over any federal claim asking the court to reverse the foreclosure, discharge the loan, and reinstate Wiggins to the property.

Alternatively, Wiggins fails to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79.

8

The legal sufficiency of a complaint depends, in part, on whether it meets the standards for a pleading stated in Federal Rule of Civil Procedure 8. See Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) aims to ensure that the defendant has adequate notice of the nature of the claims against it. See, e.g., Francis, 588 F.3d at 192.

As for a complaint's factual sufficiency, a party must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "[N]aked assertions of wrongdoing," devoid of "factual enhancement," cannot "cross the line between possibility and plausibility of entitlement to relief." Francis, 588 F.3d at 193 (quotations omitted). A plaintiff armed with nothing more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," cannot proceed into the litigation process. Twombly, 550 U.S. at 555; see Francis, 588 F.3d at 193.

Although a court must liberally construe a pro se plaintiff's allegations, it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011); see Giarratano, 521 F.3d at 304 n.5. "The 'special judicial solicitude' with which a district court should view . . . pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990). Every party—pro se or otherwise—must comply with the Federal Rules of Civil Procedure. See Iqbal, 556 U.S. at 678–69; Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) (per curiam).

Wiggins's complaint fails to state any claim against any defendant. As for Wiggins's claims against the individual defendants, she lists Thomas O'Connell as a defendant, but does not mention

9

him anywhere else in the complaint. Wiggins's complaint makes no mention of how O'Connell violated any federal or state laws. Thus, all claims against O'Connell are dismissed.

As for defendants Charlee Eades and Lenny Cicero, Eades and Cicero were substitute trustees under the subject deed of trust. Wiggins's complaint, however, fails to allege any facts supporting any federal or state claims against Eades or Cicero. Thus, all claims against Eades and Cicero are dismissed.

As for defendants Philip A. Glass, who is a substitute trustee, and Theodore A. Nodell, Jr., the attorney who represented the substitute trustees in the foreclosure hearing, Wiggins does not plausibly allege that either violated any federal or state laws. Because Wiggins's complaint fails to allege any facts supporting any federal or state claims against Glass or Nodell, all claims against them are dismissed.

As for Wiggins's other "claims," she lists various federal laws in her complaint but fails to allege any claims upon which relief may be granted. See Compl. For example, she cites the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692–1692p ("FDCPA"). See id. 2. In order to state a claim under the FDCPA, Wiggins must plausibly allege that "(1) she was the object of collection activity arising from a 'consumer debt' as defined by the FDCPA, (2) [the defendant] is a 'debt collector' as defined by the FDCPA, and (3) [the defendant] engaged in an act or omission prohibited by the FDCPA." Salley v. Bank of Am., N.A., No. 5:13-CV-753-D, 2014 WL 2768660, at *4 (E.D.N.C. June 18, 2014) (unpublished). To be considered a debt collector under the FDCPA, the defendant must be engaged "in any business the principal purpose of which is the collection of any debts" or the defendant must be attempting to collect the debts "owed or due or asserted to be owed or due another" and not debts that originated with the defendant. 15 U.S.C. § 1692a(6); see Salley, 2014 WL 2768660, at *4.

Wiggins's complaint does not include any of the necessary elements under the FDCPA. First, Wiggins fails to allege what acts constituted a collection activity arising from a consumer debt. Second, assuming arguendo that the foreclosure action is a debt collection activity of a consumer debt under the FDCPA, Wiggins does not plausibly allege that the defendants meet the FDCPA's required definition of a "debt collector." Third, Wiggins fails to plausibly allege how the defendants violated the FDCPA. Simply put, Wiggins's complaint lacks any description of specific acts that defendants allegedly committed and instead simply cites various subsections of the FDCPA without any accompanying explanation of how these subsections are relevant. Accordingly, Wiggins fails to state a claim for relief under the FDCPA.

Wiggins also cites the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"). See Compl. 2. The FCRA governs credit reporting standards and credit reporting agencies. Consumers may "bring private suits for violations of [15 U.S.C.] § 1681s-2(b)." Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 149 (4th Cir. 2008); cf. 15 U.S.C. §§ 1681n, 1681o. Section 1681s-2(b) prescribes the duties for entities that provide information to credit reporting agencies, usually creditors or their agents, when the accuracy of the reported information has been challenged. See 15 U.S.C. § 1681s-2(b). When a consumer believes that information that a credit reporting agency published is incorrect, the consumer must file a dispute with the credit reporting agency. See 15 U.S.C. § 1681i(a)(1). The credit reporting agency then notifies the creditor or creditor's agent about the dispute. See id. § 1681i(a)(2). Upon receiving notification of the dispute, section 1681s-2(b)(1) requires the entity that provided the information "to conduct a reasonable investigation of their records to determine whether the disputed information can be verified." Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004); see Saunders, 526 F.3d at 149; Davis v. Trans Union, LLC, 526 F. Supp. 2d 577, 585 (W.D.N.C. 2007). At the conclusion of the investigation, the

11

results must be disclosed to the credit reporting agency and action must be taken to remedy inaccurate or incomplete information. See 15 U.S.C. § 1681s-2(b)(1)(C)–(E); Campbell v. Wells Fargo Bank, N.A., No. 5:13-CV-785-D, 2014 WL 5471911, at *6 (E.D.N.C. Oct. 22, 2014) (unpublished).

In her complaint, Wiggins fails to cite any specific sections or subsections of the FCRA, and Wiggins fails to allege facts sufficient to satisfy any of the required elements for an FCRA claim. See Compl. Accordingly, Wiggins fails to state a claim for relief under the FCRA.

Wiggins also cites the "TCPA," which the court presumes refers to the Telephone Consumer Protection Act, 47 U.S.C. § 227. "The TCPA provides a private right of action for injunctive relief and/or monetary damages of $500 per violation." Balt.-Washington Tel. Co. v. Hot Leads Co., LLC, 584 F. Supp. 2d 736, 739–40 (D. Md. 2008); see Mims v. Arrow Fin., Servs., LLC, 132 S. Ct. 740, 746 (2012). Wiggins does not cite any particular provision of the TCPA, nor does she explain how defendants allegedly violated the TCPA. Not only does Wiggins fail to specify which of the defendants placed calls to her, she also fails to allege ever receiving any telephone calls. Moreover, courts have excepted from the TCPA's statutory prohibitions "any call made to any person with whom the caller has an established business relationship at the time the call is made," including borrowers and loan servicers. Bentley v. Bank of America, N.A., 773 F. Supp. 2d 1367, 1374 (S.D. Fla. 2011) (quotations omitted) (collecting cases). Thus, Wiggins has not plausibly alleged any violation of the TCPA, and the court dismisses Wiggins's claim that the defendants violated the TCPA. See, e.g., id. at 1374–75.

Wiggins's complaint also alleges that defendants violated the "CFPB." See Compl 2. Wiggins does not define CFPB, and the only reference regarding CFPB and federal law appears to be the Consumer Financial Protection Bureau ("CFPB"). In 2010, Congress created the CFPB

12

pursuant to 12 U.S.C. § 5491. The CFPB is an executive agency charged with regulating "the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. § 5491(a). The CFPB is a regulatory agency, not a source of a private cause of action. Thus, the court dismisses Wiggins's claim that defendants violated the CFPB.

II.

As for Wiggins's motion to amend her complaint, a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962); Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987). A court should deny leave "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986); see Island Creek Coal, 832 F.2d at 279. Amendment of a complaint is futile when the amended complaint would not survive a motion to dismiss under Rule 12(b)(6). See, e.g., Kaytle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011); Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995).

In the proposed amended complaint attached to Wiggins's motion to amend, Wiggins initially references claims for (1) violations of the FDCPA, (2) violations of the FCRA, (3) invasion of privacy under North Carolina law, and (4) intentional infliction of emotional distress under North Carolina law. See [D.E. 23-1] 1. In the body of her proposed amended complaint, however, Wiggins alleges (1) violations of the FDCPA, (2) violation of the North Carolina Unfair and Deceptive Trade Practices Act, and (3) intentional infliction of emotional distress. See id. ¶¶ 30–52. Wiggins names as defendants Planet Home, Mortgage Investors Corporation, Theodore A. Nedell Jr., Lenny Cicero, and Charlie Eudes. Id. 2. In connection with all of her proposed claims, Wiggins alleges that someone forged her signature on the deed of trust, note, and other documents that

13

defendants attached to their answer and that the clerk relied on during the foreclosure action. See id. ¶¶ 9, 17–19, 45.

As for Wiggins's FDCPA claims, Wiggins contends that defendants violated section 1692d, 1692(f), 1692(g)(b), 1692(g)(1)(2)(3), 1692(e)(8), 1692i, 1692j, and 1692e(11). See id. ¶¶ 31–41. The claims, however, are futile for at least three reasons. First, Wiggins makes no specific allegations concerning each defendant, and group pleading is not permitted. See, e.g., Pipefitters Local No. 636 Defined Benefit Plan v. Tekelec, No. 5:11-CV-4-D, 2013 WL 1192004, at *6 (E.D.N.C. Mar. 22, 2013) (unpublished) (collecting cases). Second, the Rooker-Feldman doctrine and collateral estoppel bar her FDCPA claims. See, e.g., Johnson, 512 U.S. at 1005–06; Allen, 449 U.S. at 94–95; Feldman, 460 U.S. at 486; Sartin, 535 F.3d at 287–88; Davani, 434 F.3d at 718–19; Washington, 407 F.3d at 279; Thomas M. McInnis & Assocs., 318 N.C. at 428, 349 S.E.2d at 557; Meehan, 127 N.C. App. at 339–40, 489 S.E.2d at 443. Third, Wiggins fails to state a claim under the FDCPA. See, e.g., McPhail v. Wells Fargo Dealer Servs., No. 5:13-CV-645-BO, 2013 WL 6839657, at *4–5 (E.D.N.C. Dec. 23, 2013) (unpublished); Davis v. Bowens, No. 1:11CV691, 2012 WL 2999766, at *4 (M.D.N.C. July 23, 2012) (unpublished).

Next, Wiggins claims that defendants violated the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") by forging the deed of trust, the note, and other documents. See [D.E. 23-1] ¶¶ 42–47. In order to state a claim under the UDTPA, a plaintiff must plausibly allege: "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." Griffith v. Glen Wood Co., 184 N.C. App. 206, 217, 646 S.E.2d 550, 558 (2007) (quotation omitted); see Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 87–93, 747 S.E.2d 220, 226–29 (2013); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711

14

(2001). Under the UDTPA, a defendant's conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. See, e.g., Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 902 (4th Cir. 1996); Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 700 (1992). Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court. See, e.g., Tucker v. Blvd. at Piper Glen LLC, 150 N.C. App. 150, 153, 564 S.E.2d 248, 250 (2002); Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998).

Wiggins's UDTPA claim is futile because she cannot use this action to make a belated, implausible fraud claim and relitigate the validity of the note, deed of trust, and other loan documents. Thus, the claim fails.

Finally, Wiggins alleges intentional inflection of emotional distress. "The essential elements of an action for intentional infliction of emotional distress are: 1) extreme and outrageous conduct by the defendant 2) which is intended to cause and does cause 3) severe emotional distress." Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (quotation omitted). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Smith-Price v. Charter Behavioral Health Sys., 164 N.C. App. 349, 354, 595 S.E.2d 778, 782 (2004) (quotation omitted); see Wagoner v. Elkin City Sch.' Bd. of Educ., 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (1994). Whether conduct is "extreme and outrageous" is a question of law. Lenins v. K-Mart Corp., 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990); see Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 544 (E.D.N.C. 2008).

Wiggins's intentional inflection of emotional distress claim is futile. She fails to plausibly allege any of the required elements.

III.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 17], DISMISSES plaintiff's complaint without prejudice, and DENIES plaintiff's motion to file an amended complaint [D.E. 23] as futile.

SO ORDERED. This 26 day of June 2015.

JAMES C. DEVER III
Chief United States District Judge